**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| KNOBLAUCH BUILDERS, INC. | : | |
| | : | |
| Debtor(s) | : | Bky. No. 06-15934ELF |
| | : | |
| KNOBLAUCH BUILDERS, INC., | : | |
| | : | |
| Plaintiff(s) | : | |
| | : | |
| v. | : | |
| | : | Adv. No. 07-0280 |
| JEFFREY M. BROWN ASSOCIATES, INC., | : | |
| GEORGE F. KEMPF SUPPLY CO. | : | |
| | : | |
| Defendant(s) | : | |

# O R D E R

**AND NOW**, this **1ST DAY OF OCTOBER, 2007**, upon consideration of:

(1) the Plaintiff's Motion Seeking the Following Relief: A) Temporary Restraining Order and Preliminary Injunction Against Jeffrey M. Brown Associates, Inc and George F. Kempf Supply Co. ; B) Imposition of the Automatic Stay under 11 U.S.C. §105 ("the Motion")**;**

(2) Motion for Temporary Stay of Adversary Proceeding ("the Kempf Motion")filed by Defendant George F. Kempf Supply Co. ("Defendant Kempf");

**AND**, an evidentiary hearing on the Motion and the Kempf Motion having been held on September 26, 2007,

**AND**, the Official Committee of Unsecured Creditors ("the Committee") supporting the request of the Plaintiff-Debtor ("the Debtor") for injunctive relief,

**AND**, following the hearing, the court having authorized the Debtor and the Committee

-1-

to submit a "letter-brief" on September 28, 2007 and Defendant Kempf to submit a "reply letter-brief" on October 2, 2007 in support of their respective positions,

**AND**, the court having been advised that none of the parties intend to submit a letter-brief, thereby rendering these matters ready for decision,

**AND**, in the Motion , the Debtor requesting that the court enjoin Kempf (a non-debtor) from prosecuting an arbitration proceeding ("the Arbitration") that is pending to adjudicate a monetary claim asserted by Kempf against another non-debtor (B&K Construction, Inc.) (hereinafter "B&K"),[1]

---

[1] The Arbitration is titled <u>George F. Kempf Supply Co. v. B& K Construction, Inc. and Thomas Knoblauch</u>, No. 14-421-Y-00367-07 (Amer. Arb. Ass'n). The Arbitration concerns Kempf's claim that it is owed money for supplies it asserts that it provided to B&K in connection with B&K's work as sub-contractor of Defendant Jeffrey C. Brown, Inc. ("Brown"). The claim asserted by Kempf is approximately $500,000.

Brown was the general contractor in connection with a construction project known as "the Edgewater Project." Brown may be liable to its sub-contractor for certain work done in connection with the Edgewater Project ("the Brown Receivable"). The amount of the Brown Receivable may be in the range of $800,000 to $1.6 million. A key dispute in this bankruptcy case is whether the Brown Receivable is owed to B&K or to the Debtor. Kempf asserts that the Brown Receivable is owed to B&K. Kempf hopes to obtain a money judgment against B&K and then attach the Brown receivable as an account receivable asset of B&K. The Debtor asserts that the Brown Receivable is owed to the Debtor and is an asset of the bankruptcy estate that should be available for the benefit of all of its creditors, not just Kempf.

      **AND**, the court finding that the Debtor has not established all of the elements necessary for the court to grant the injunctive relief requested by the Debtor;[2]

---

    [2]    A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.  E.g., Child Evangelism Fellowship of New Jersey, Inc. v. Stafford Tp. School Dist. 386 F.3d 514, 524 (3d Cir. 2004).

      Based on the evidence presented at the preliminary injunction hearing, the Debtor did not establish that the bankruptcy estate would suffer irreparable harm if Kempf is permitted to proceed with the Arbitration.  At most, the Debtor established only the possibility that the entry of an arbitration award in favor of Kempf and against B&K might preclude the Debtor from objecting to a portion of an as yet unfiled Kempf claim against the estate through application of the doctrine of collateral estoppel.

      Given the order of magnitude of the dispute concerning the amount of Kempf's claim (Kempf asserts a claim of approximately $500,000 while B&K and the Debtor dispute approximately $130,000 of Kempf's asserted entitlement) and given the aggregate amount of the unsecured claims likely to be allowed in this bankruptcy case (estimated by the Debtor and the Committee to be approximately $3.5 million), I am not persuaded that the Debtor's potential loss of the right to object to the disputed portion of the unfiled Kempf "claim" against the bankruptcy estate (a liability that, at least for the present, Kempf asserts is owed by B&K and **not** by the Debtor) will create any significant risk to the Debtor's effort to reorganize.  Based on the testimony of the Debtor's principal, I anticipate that the Debtor's efforts to reorganize will require a distribution to unsecured creditors funded entirely from anticipated profits from future operations.  Accord, Debtor's Amended Plan §3.5 (Docket Entry No. 182).  I doubt whether the Debtor's ability to win the support of the unsecured creditors for its eventual plan of reorganization will be affected if the amount that the Debtor asks the unsecured creditors to accept as a distribution from its profit projections is divided pro rata among approximately $3.5 million in allowed claims instead of approximately $3.37 million in allowed claims.

      Nor do I consider the possibility that the Debtor (or the Committee) will lose the ability to object to the allowance of $130,000 of Kempf's possible future proof of claim substantially impairs the rights of the unsecured creditors in this case – in comparison to the potential prejudice Kempf may suffer if it is restrained from exercising its right to proceed with the arbitration under applicable nonbankruptcy law.  Whatever the quantity of that "harm" may be, I find that the potential harm to Kempf outweighs the harm to the bankruptcy estate.  The potential reduction in distribution to unsecured creditors is likely to be marginal if the Debtor or the Committee cannot object to $130,000 of Kempf's possible future proof of claim.  The danger to Kempf were I to issue the requested injunction is far greater – that risk being that other creditors of B&K may obtain a judgment and attach the Brown receivable (which may eventually

**AND**, although the court will not enjoin Kempf from prosecuting the Arbitration, the court finding that it is necessary and appropriate to temporarily enjoin the exercise of certain, subsequent collection remedies that may become available to Kempf should Kempf succeed in obtaining an award in its favor in the Arbitration,[3]

---

be determined to be an asset of B&K and not the bankruptcy estate) and satisfy their claims from B&K's assets (which are likely to be limited) while Kempf is restrained by Order of this court. The risk of harm to Kempf outweighs the potential benefit to the bankruptcy estate from the issuance of an injunction.

[3] While the entry of an arbitration award against B&K would not harm the bankruptcy estate, at least to a degree that outweighs the potential harm to Kempf, see n.2, supra, the actual payment by Brown to Kempf of the Brown Receivable (i.e., a receivable that the Debtor and the Committee assert is an asset of the bankruptcy estate) would create an unacceptable risk of irreparable harm to the estate. Such payment could easily place a valuable and important asset permanently beyond the reach of the bankruptcy, or at least prevent the timely collection of a large asset that may be critical for a successful reorganization.

Upon balancing all four (4) of the standards for the issuance of a preliminary injunction, see Quaker Chemical Corp. v. Varga, 2007 WL 2593041, *6 n.7 (E.D.Pa. September 4, 2007) (pointing out that some appellate authority suggests that the trial court should balance all four (4) preliminary injunction standards, while other authority suggests that plaintiff must prevail on the first two factors before the court exercises its discretion with respect to the last two (2) factors, if they are relevant), I find that some judicial restraint on Kempf's exercise of its remedies against B&K and Brown under applicable nonbankruptcy law is appropriate. I also conclude that a temporary remedy can be fashioned to accommodate the competing interests of he parties pending the determination whether or not the Brown obligation is property of the bankruptcy estate (an issue that is squarely raised in the instant adversary proceeding). Consequently, while I will permit Kempf to seek the entry of an arbitration award against B&K, to reduce to judgment any award obtained and to cause a writ of execution against Brown to be issued and served (thereby creating a judicial lien in Kempf's favor on the Brown Receivable), I will not permit Kempf to proceed any further in the execution process until a determination is made as to which entity is entitled to the Brown Receivable. This modest restriction on Kempf's rights under applicable nonbankruptcy law will permit to Kempf to perfect, in the ordinary course, any rights it may have to reach the Brown Receivable. I will also make clear any lien Kempf may obtain in the Brown Receivable will be void if this court later determines that the Brown Receivable is an asset of the bankruptcy estate rather than B&K. See In re Myers, 491 F.3d 120, 128 (3d Cir. 2007) ("actions in violation of the stay are void"); Constitution Bank v. Tubbs, 68 F.3d 685, 692 (3d Cir. 1995) (same).

**AND**, the court concluding that the overlap between the issues and claims arising in the above-captioned adversary proceeding and the Arbitration is not so substantial that judicial economy would be achieved by staying this adversary proceeding pending the outcome of the Arbitration,

It is hereby **ORDERED** that:

1. The Motion is **GRANTED IN PART AND DENIED IN PART**:

   A. The Motion is **DENIED** insofar as it requests an injunction restraining Kempf from:

      1. prosecuting the Arbitration in order to obtain an arbitration award in its favor;

      2. obtaining a money judgment against B&K;

      3. causing a writ of execution based on a money judgment against B&K to be issued and served against Brown (thereby creating a judicial lien in Kempf's favor on any account receivable asset B&K may have against Brown).

   B. The Motion is **GRANTED** insofar as it requests a preliminary injunction restraining Kempf from collecting any money from Brown based upon the enforcement of a writ of execution as described in ¶1.A.3., above.

   C. In the event, that Kempf obtains a judicial lien against the Brown through the issuance and service of a writ of execution as described in ¶1.A.3. above, said lien is subject to being annulled and voided in the event that it is determined that Brown's monetary liability arising from the construction project known as Edgewater Project is owed to

the Debtor and that, therefore, the asset attached by Kempf constitutes property of the bankruptcy estate.

D. In the event that a judicial lien obtained by Kempf against Brown is subject to being annulled and voided, Kempf shall not be liable for any damages under 11 U.S.C. §362(k) for violation of the automatic stay due to its reliance on the provisions of this Order.

2. The Kempf Motion is **DENIED**.

_____
**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**